## Case No. 3,074.

### In re COMSTOCK et al.

### [5 N. B. R. 191.] [1]

District Court, W. D. Michigan. July, 1871.

EXPENSES OF OPPOSITION TO PETITION FOR INVOLUNTARY BANKRUPTCY—ATTORNEY'S FEES.

1. A debtor has the right to appear and defend himself against a petition in bankruptcy; hence, although unsuccessful in his defence, the court has the power to allow him such expenses as may be just and proper, including attorney's fees, to be paid from the assets in the hands of the assignee.

[Cited in Re Jaycox, Case No. 7,239; Re Gies, Id. 5,407.]

2. An attorney is also entitled to be paid, out of the same fund, for services rendered to the bankrupt in securing the allowance of exemptions which were rejected by the assignee.

In bankruptcy.

[David B.] Comstock, one of the bankrupts, resisted the petition to have himself and [Van E.] Young declared bankrupts, as to himself, employing Rogers & Clay, attorneys, for that purpose. They appeared, and contested the adjudication prayed for as against Comstock. But the court adjudged the parties bankrupt. Now comes Rogers & Clay, and ask that their services for Comstock be ordered paid by the assignee, out of assets in his hands, alleging the inability of Comstock to pay, because of his having been obliged to turn over to the assignee in bankruptcy all the company property, and all his individual, except such as the law exempts. The bankrupt's assets are not

---

[1] [Reprinted by permission.]

equal to fifty cents on the dollar of the debts proved. Can payment be ordered from the assets in the assignee's hands?

WITHEY, District Judge. When a party is declared bankrupt in a proceeding in invitum, a warrant issues at once to the marshal to take possession of the bankrupt's property and effects; he is thereby deprived of all control over his estate, save such as is exempt; he is practically without means with which to pay his attorneys for services in defending against the petition. The amount which the bankrupt gets by exemption is, in most cases, trifling, and in no case is it so much but that he or his family are dependent for support on his personal efforts and earnings. Thus, we see, the law takes the bankrupt's property, and leaves him in no condition to pay an attorney for services rendered in contesting any doubtful questions as to the acts of bankruptcy charged in the petition; and yet the same law gives to the debtor the right to oppose, before a judge or a jury, the petition for adjudication. Suppose the debtor, in good faith, employs an attorney and pays him, (pending the litigation on the question of bankruptcy) subpoenas witnesses and pays them, obtains, it may be, documentary evidence, and disburses therefor, and is at the trial adjudged a bankrupt. Could the assignee turn round and successfully claim from the attorney, or any of the parties, any portion of the amounts so paid out, after notice of the petition filed? Would such payments by the alleged bankrupt be grounds for opposing his discharge? Clearly not. In Re Rosenfeld [Case No. 12,057], it is held no ground for refusing a discharge that the bankrupt employed and paid attorneys from his assets, for resisting the proceedings in bankruptcy. The court, in that case, suggest that the bankrupt had no right to appropriate his assets for any such purpose, or for any other, and placed the discharge on the ground that no fraud was intended.

I am aware that in Re Heirschberg [Case No. 6,329], being a voluntary case, it was ruled, that an attorney's charges for services in behalf of the petitioning bankrupt, and for necessary disbursements incident to preparing and filing the petition, could not be paid by the assignee out of the funds in his hands belonging to the bankrupt's estate, under section twenty-eight. But I am not disposed, after carefully considering the various provisions of the bankrupt act [of 1867 (14 Stat. 530)], and viewing both sides of the question, to adopt the ruling in that case. By section twenty-eight, "the fees, costs and expenses of suits, and the several proceedings in bankruptcy," are entitled to be first paid. Primarily, this may refer to such "fees, costs and expenses of suits, and the several proceedings" as go to the register, assignee and marshal, but in my opinion, when the debtor is given the right to appear and defend, and when the exercise of that right depends on the right to have of his property enough appropriated to pay the expense incident to appearing and defending, the court has the power, and of right ought to allow such expense as may be just and proper, to be paid from the assets in the hands of the assignee. For the law to lay its hands on all a man's property, and withhold it from his power to appropriate enough to meet the expense of a just defence of his rights, is equivalent to saying, "You may defend, if you can, but your property shall all be taken from you so that you cannot defend." I will not believe, nor will I hold, that congress intended to deprive a party of the right to have enough of his own property appropriated to his use, to enable him to contest the doubtful questions which may be, and frequently are, involved as to the charge of acts of bankruptcy. I will not be so tender of the rights of creditors as to deprive the debtor of all chance to assert his rights, nor do I believe the law was ever intended thus to outrage and involve the debtor class. It is true the unsuccessful party in a litigation seldom recovers costs, yet sometimes he is allowed enough to meet the expenses of prosecuting or defending, as the case may be, where all his means are out of his hands, and are so far within the power of the court to control. But the question I am considering does not range itself within the reason which governs in ordinary suits, as to costs and expenses.

The court should be satisfied, before allowing anything, that the defence was fairly justified, and should scrutinize the charges made for any such defence.

I allow twenty-five dollars for resisting the petition in this case, and the further sum of twenty-five dollars for services in securing the allowance of exemptions, which were rejected by the assignee. The assignee disallowed certain claimed exemptions, and the bankrupt was obliged to appeal to the court or lose what he was entitled to. His appeal was successful, and he should, on general principles, be allowed his necessary costs. The assignee is ordered to pay to Rogers & Clay the sum of fifty dollars, out of any funds belonging to the bankrupt's estate.